# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Criminal Action |
| VONNIE E. YOUNG, | ) No. 05-03142-03-CR-S-DW |
| | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed a Motion to Suppress Evidence, in which she asserts that evidence seized as a result of a vehicular stop should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on September 6, 2006. Defendant was present with counsel, Shawn Askinosie and John Gore, and the United States was represented by Randall Eggert, Assistant United States Attorney.

The government first called David Holmes, of the COMET Drug Task Force. On June 23, 2005, he was working for the Republic Police Department. On that date, he came into contact with defendant. She was stopped pursuant to a traffic stop after they had received information from a confidential informant that a Chevy Cavalier was going to be coming into the city of Republic from Springfield, and delivering four eightballs of methamphetamine to the informant. Officer Holmes asked the informant to assist with the investigation. The informant was instructed by Officer Holmes to meet with the individual in the vehicle at the Express Lane Gas Station in Republic. He told the informant that he would be present to conduct surveillance, and not to make any transactions

1

when he met with the individuals. The plan would be to tell the individuals that he didn't have the money for the drugs, and that they would have to follow him back to the house. The confidential informant agreed to do this. He also provided the name of Raymond Schaffer as one of the individuals involved, and said that there was a parole absconder warrant out on him. The officer verified that there was an active warrant for Mr. Schaffer. On June 23rd, surveillance was set up at the Express Lane. Another officer, Michael Shook, was posted across the street from the gas station, and was to notify them when the suspects arrived. At about 2:00 p.m., Officer Shook telephoned Officer Holmes and advised him that a white car with Arizona plates had arrived, with three individuals, including defendant, inside the vehicle. Officer Holmes watched the three meet with the confidential informant, and then everyone got back into their respective vehicles and left the gas station. He saw the suspects drive away in a white Toyota, which was closely following the vehicle that the informant was driving. This was proceeding according to their plan, where the informant would tell them that he didn't have the money with him, and they would have to follow him to his house. Officer Holmes followed along side the informant, and Officer Shook was behind both of the vehicles, with other surveillance officers behind them. He observed that the driver looked extremely nervous, was following closely behind the informant's vehicle, and was exceeding the posted speed limit. Officer Holmes called Officer Shook after having followed the vehicles for a distance, and told him to make the traffic stop. After he made that call, the informant called him on a cellular phone and said that Mr. Schaffer was in the vehicle, and that he did have four eightballs of methamphetamine on his person, which the informant had seen. He informed the confidential informant to keep going, because Officer Shook had initiated the traffic stop. Officer Holmes also stopped, and approached the passenger side of the vehicle, making contact first with Mr. Schaffer.

2

He asked for his identification, which he did not have, but he did provide his first name. Officer Holmes saw a sword on the floor, at Mr. Schaffer's feet, and noted that he was extremely nervous. He opened the back door and asked him to step out. He conducted a pat down search for weapons, and located methamphetamine in one of his pockets. The officer was familiar with the drug because of his experience in drug investigations. Mr. Schaffer was arrested, and four eightballs of methamphetamine were ultimately found on his person. He eventually identified himself. For officer safety issues, they wanted to secure the vehicle, where they knew weapons were inside, and because they did not know the identity of the other individuals. Defendant was in the front passenger seat. He had her exit the vehicle, and took her to the front of it. As this was happening, Officer Holmes observed bags of methamphetamine falling out of her clothing. A female officer arrived, and conducted a pat down search of defendant, where a total of 16 bags of eightballs of methamphetamine were found. Defendant was arrested and searched for weapons, and then a Terry search of the vehicle was conducted, where they found more drugs and weapons in plain view. He would estimate that the total time that elapsed was less than 15 minutes.

    On cross examination, the officer stated that he knew the identity and the full name of Raymond Schaffer through his investigation. He acknowledged that he did not remember when he found out his last name. He admitted that the Toyota did not match the description of the vehicle provided by the informant. He did see the vehicle arrive, and agreed that it was not green, not an older model car, was not wrecked in front, and had Arizona tags. He also admitted that when he saw two individuals get out of the vehicle, he did not know who they were. He believed that one of them was Ray Schaffer because of the direction they were traveling from, even though the informant never told him what direction they would be coming from. He didn't see anything exchange hands,

and saw no crime committed. The officer admitted that the informant did not say there would be other individuals in the car. Regarding the phone call by the informant, the officer acknowledged that he did not mention this in his report. He stated that this was because he did not want to divulge information about the informant in his report. He also admitted that he did not include in his report the fact that he corroborated the information regarding the active warrant because he does not usually include in a report the different investigative techniques he uses to corroborate information. Regarding the traffic violation of following too closely, he saw this happen. He did not give the distance in his report, he did not indicate the speed, and did not describe the amount of traffic, nor the conditions of the road, although these are factors to consider. He did not mention that the driver was speeding in his report, although he stated that he was pacing the vehicle.

On redirect examination, the officer testified that he omitted some information from his report to protect the identity of the informant. The purpose of his report was to establish probable cause for the drug investigation, and not to substantiate the traffic stop.

The next witness for the government was Officer Michael Shook, Patrol Officer with the Republic Police Department. He was working on the day in question, when he came into contact with defendant. Officer Holmes ask him to set up surveillance with the confidential informant. The officer told him that a possible narcotics transaction was going to occur, and he was to watch the informant's car at the Express Lane in Republic, Missouri. Officer Shook saw a vehicle approach, and saw a white male get into the car with the informant. He then saw them contact two other individuals, a male and female, who were sitting on a park bench. They all got into the Toyota, and pulled out. He followed the vehicles and initiated the traffic stop. He contacted the driver and told him the reason for the stop. He saw a pocket knife in the vehicle. The officer asked Mr. Brooks, the

4

driver, and defendant to step out of the vehicle because of the pocket knife. He never leaves anyone in a vehicle with a weapon. Both individuals followed his orders and sat on a curb in the parking lot. He noticed a small bag of a crystal substance on the asphalt directly below defendant's pant leg. He recognized this as crystal methamphetamine. He asked her to shake her pant leg, which she did, and more bags of drugs fell out. A female officer patted down defendant, found a silver pocket knife in her jeans, and more baggies of a crystal substance. He believed a total of 16 bags of a crystal substance, which later tested positive for crystal methamphetamine, were found. They were arrested and taken away from the scene. He wrote a summons for Mr. Brooks regarding the traffic violation of following too closely. The time noted on the ticket was 2:06 p.m. He estimated that the amount of time that elapsed was less than 15 minutes. After the individuals were taken away, there was a search incident to arrest conducted of the vehicle.

On cross examination, the officer stated that he wrote an accurate report in this case, which was a supplemental report to Officer Holmes. He wrote it on June 26th. During the surveillance, he was outside his vehicle using binoculars. Officer Holmes told him it might be possible that a narcotics transaction would occur at that location. He did not have a name for any of the individuals. He also admitted that he did not include factors relevant to traveling too closely in his report. When he noticed that the car was traveling too closely, he could have stopped the vehicle at that point, but he thought that it was possible that they might speed up and separate. He denied that he was told to find a traffic violation in order to stop the vehicle. When he initiated the traffic stop, which was about two miles from the Express Lane, he told Officer Holmes that he stopped the vehicle for following too closely. He stated in his report that the Toyota followed the confidential informant's vehicle by two to three car lengths. He was able to observe this because of the angle

5

from which he could view the cars. He admitted that this was an approximation. He did not note in his report that the Camry was speeding, and he did not write a ticket for speeding.

At the conclusion of the hearing, counsel for defendant requested that the Court take judicial notice that DEA Agent Johnson stated before the grand jury that Officer Holmes instructed other officers to look for a traffic violation that would justify a stop of the vehicle in question.

It is defendant's contention that the stop, detention, search and seizure, and arrest were unlawful. She contends that the stop was pretextual, and that there was not probable cause to search the vehicle, nor to arrest defendant. It is her contention that the officers did not have an objective basis for the traffic stop, because none of the events that Officer Holmes observed at Express Lane created a particularized belief to suspect legal wrongdoing sufficient to justify a traffic stop. Further, she asserts that none of the events that ensued after the Toyota left the Express Lane were sufficient to justify a traffic stop because the officers did not specify the factors that would indicate that the vehicle was following too closely under Missouri law. She also contends that there was insufficient evidence to justify detaining her and expanding the scope of the search. Defendant asserts that the reports written by the officers were inconsistent in their description of the events that lead to her removal from the vehicle, and therefore, that there was not a sufficient basis to detain her. She contends that the evidence and her statements should be suppressed.

The government contends that the stop was valid because the officers had reasonable suspicion that criminal activity was afoot inside the Toyota, and because the driver had committed two traffic violations, which were objectively observed by the officer who stopped them. It is asserted that, although defendant complains that the report did not specifically delineate the factors in which a violation of following too closely occurs, the issue for the Court to consider is whether

6

the officer's actions were objectively reasonable under the circumstances. Further, it is asserted that the officers had a reasonable suspicion of criminal activity. Regarding the search itself, the government asserts that both the search of the Toyota and the pat-down search of defendant were legal as part of a Terry-type stop and search. This is based on the plain view observation by the officers of the weapon inside the vehicle, as well as the plain view observations of methamphetamine on Schaffer and defendant, and on the search incident to the arrests of both.

Turning first to the validity of the traffic stop, the law is well-established that a traffic violation provides an officer with probable cause to stop a vehicle, regardless of the severity of the violation. United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001); United States v. Enriquez Luna, 368 F.3d 876, 878 (8th Cir. 2004). In this case, both officers credibly testified that the vehicle in which defendant was riding was following too closely, in violation of state law. They both stated that they observed the Toyota following too closely behind the vehicle that the confidential informant was driving. This is the offense for which a ticket was written. The Court is satisfied that the credible evidence established that their actions were objectively reasonable under the totality of the circumstances. While there was some inconsistency in the testimony regarding the speed at which the Toyota was traveling, the Court does not believe this to be a material issue, given that there was no ticket issued for that offense. Based on the testimony adduced at the hearing and applicable case law, the Court finds, therefore, that there was a valid traffic stop based on the fact that the Toyota was following too closely.

Additionally, the officers' testimony established that they both had reasonable suspicion of criminal activity under the totality of the circumstances. Officer Holmes was conducting a drug investigation at the time of the stop, based on information provided by the confidential

7

informant. He credibly testified that he learned Ray Schaffer's full name through investigative work, and that he had corroborated the fact that Ray Schaffer had an outstanding warrant for a parole violation. While the vehicle that arrived at the Express Lane did not match the description of the vehicle that the confidential informant said would be there, the events that unfolded were all consistent with what the informant had described. The officers, as part of their surveillance, were stationed at various posts on the day and at the time the informant had provided, and observed a vehicle drive up, observed individuals exit that vehicle, observed at least one of them talk to the informant, and then observed everyone get back into their respective vehicles. This was exactly according to Officer Holmes and the informant's plan. The Toyota then closely followed the informant out of the parking lot. Shortly thereafter, the confidential informant called Officer Holmes to confirm that Ray Schaffer was in the Toyota and that he had four eightballs of methamphetamine with him. Despite the fact that the vehicle description was incorrect, it is obvious that, under the totality of the circumstances, the officers had more than ample confirmation to establish reasonable suspicion of criminal activity, which would also justify the traffic stop.

Once a valid traffic stop occurs, the investigating officer is only entitled to conduct an investigation reasonably related in scope to the circumstances that justified the initial stop. Terry v. Ohio, 392 U.S. 1 (1968). It is also clear that where an individual is detained after an initial lawful stop, the question is whether the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990). Law enforcement officers are entitled to stop and briefly detain an individual for investigative purposes if there is reasonable suspicion that criminal activity may

be afoot. United States v. Hill, 91 F.3d 1064, 1069 (8th Cir. 1996).

The evidence adduced at the hearing establishes that the subsequent temporary detention to question defendant was within legal parameters. At the time of the stop, Officer Holmes had received a cellular telephone call from the confidential informant, who advised him that Ray Schaffer, who was identified as the individual who would be involved in the methamphetamine sale, was in the backseat of the vehicle, with four eightballs of methamphetamine in his possession. Officer Holmes had also corroborated that there was an outstanding warrant for Schaffer. Regardless of the fact that the vehicle did not match the description that was given by the confidential informant, it is obvious that the subject of the encounter and at least one person involved were as the informant had stated. After the initial valid traffic stop, Officer Holmes observed a weapon inside the vehicle, in plain view. For officer safety, it was reasonable for the officers to remove the occupants of the vehicle. Having done so, bags of methamphetamine were observed in plain view, falling out the bottom of defendant's pant leg. Clearly, the officers had probable cause at that point to pat down defendant, to detain her, and to arrest her.

Based on the totality of the evidence, the Court finds that the officers had the legal right to stop the vehicle, to detain defendant, and to conduct a pat-down search of her person, as well as to conduct a search of the vehicle, incident to the arrest. Accordingly, there is no basis to suppress the evidence, nor defendant's statements. Therefore, it will be recommended that the motion to suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

/s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date: 10/16/06